IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BENJAMIN T.,[1] <br><br>            Plaintiff, <br>    v. <br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br>            Defendant. | Case No.: 3:23-cv-00495-AN <br><br><br>OPINION AND ORDER |

        Benjamin T. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## BACKGROUND

**I.    Plaintiff's Application**

        Plaintiff was born on May 6, 1989, making him 22 years old on his alleged onset date of January 31, 2012. Tr. 58. Plaintiff has a high school education and no past relevant work. Tr. 26.  In his application, Plaintiff alleges disability due to mental health issues. Tr. 58, 208.

        The Commissioner denied Plaintiff's application initially and upon reconsideration. Tr. 67, 78-79. On December 2, 2021, Plaintiff appeared with counsel for a

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

hearing before Administrative Law Judge ("ALJ") Jo Hoenninger. Tr. 31-56. On September 7, 2017, the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 16-27. The Appeals Council denied review. Tr. 1. Plaintiff now seeks judicial review of the ALJ's final decision.

## II.     Sequential Disability Evaluation

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of his application, December 27, 2019. Tr. 18. At step two, the

ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: post-traumatic stress disorder ("PTSD"), attention deficit hyperactive disorder ("ADHD"), and depression. Tr. 19. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id*. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with the following limitations:

> He can understand and remember short, simple instructions; has sufficient concentration, persistence and pace to complete simple, routine tasks on a sustained basis for a normal workday and workweek; can have only occasional interactions with co-workers and supervisors, with no teamwork; and no contact with the general public.

Tr. 21. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 26. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Cleaner II (DOT# 919.687-014), a medium level occupation with an SVP of 1 and 55,900 jobs available; Small Parts Assembler (DOT# 709.684-022), a light level occupation with an SCP of 2 and 319,284 jobs available; and Marker (DOT# 209.587-034), light level occupation with an SCP of 2 and 130,200 jobs available. Tr. 27. Therefore, the ALJ concluded that Plaintiff is not disabled. *Id*.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by

isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to provide specific, clear and convincing reasons to reject his symptom testimony that he would be absent from work frequently and struggle to interact with others; and (2) that newly submitted medical opinion evidence by Plaintiff's treating mental health nurse practitioner should have been taken into account.

### I.   Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear

and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, Plaintiff testified that he could not work on a regular, full-time basis because he lacks energy, is terrified of being around people and in public, and has other mental health issues. Tr. 41. He stated that he is currently taking Adderall and Doxepin, and he is not experiencing any side effects from either. *Id*. Plaintiff reported that he lives in a tent in the areas between national parks, that he spends a majority of his time in his tent, and that he often dissociates while in his tent. Tr. 39, 43. He stated that a friend helps him move his tent every 30 days, that he uses public transportation about twice a month for his medical appointments, and he tries to use public transportation when it is "really empty." Tr. 40. When he goes grocery shopping, he tries to go around midnight, when there are no other people shopping. Tr. 44. Plaintiff also stated that he goes on walks about three times a month, when he can muster the energy. Tr. 45. Plaintiff further stated that he sees his counselors once every two weeks, and

that he experiences a lot of anxiety when he does. Tr. 45. When asked if he could maintain a simple, full-time job where he did not interact with people very much, he did not state that he could not do it, but that he felt he would be "disappointing people" because he lacks energy. Tr. 47.

The ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. The ALJ discounted Plaintiff's subjective symptom testimony because: (1) his level of activity was inconsistent with his allegations; (2) he got better with treatment; and (3) his allegations were inconsistent with his medical records.

   1. **Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id*. at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

        The ALJ discounted Plaintiff's subjective symptom testimony because he is able to seek treatment, care for his personal needs, do laundry, grocery shop, care for his cat, and take walks. Tr. 22. Here, the ALJ did not explain how Plaintiff's ability to perform these daily activities undermines his testimony. Neither did the ALJ find that Plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165. Furthermore, Plaintiff stated that his treatment providers accommodated him by seeing him in more secluded offices, that he shopped for groceries and took public transportation at times when there would be less people, and that his walks were infrequent. Tr. 40, 44-45.

        Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by Plaintiff, this fails to provide a specific, clear and convincing basis upon which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

    **2. Treatment**

        An ALJ may discount a claimant's mental health-related symptom testimony because she improved with treatment. *Niemi v. Saul,* 829 F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ observed that the claimant's "mental health challenges appeared to improve with counseling and medication"). However, discounting a claimant's mental health related symptom testimony based on evidence of improvement may still result in harmful error. The Ninth Circuit cautions that when "discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at

1017. That is, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

        Here, the ALJ relied on reports of the Plaintiff's symptoms not only improving over time but also that his symptoms were being well managed with treatment. Tr. 22-24. In the decision, the ALJ noted instances of Plaintiff's progress, such as when he reported improvements in his mood, energy, sleep quality, and a less labile mood in March of 2020. Tr. 22, citing Tr. 370, 376, 379-80. The ALJ also noted that Plaintiff ended his treatment at Volunteers of America following a contentious March 2020 appointment because medication protocols prevented the prescribing of stimulants without an in person visit and possibly a urine drug screen. Tr. 22, 379. The ALJ noted that Plaintiff resumed treatment with a different provider in April, and that while he was reporting some improvement in his depression from Bupropion, he also reported being unable to leave his house because of anxiety, had positive signs of avoidance behavior, felt unmotivated, expressed an inability to focus, and was having panic attacks. Tr. 23, citing Tr. 418. The ALJ relied on other reports as well, such as in June 2020, when Plaintiff reported a better mood and pursuing his passion in organic chemistry, in August, September, and October 2020, where Plaintiff reported improvement in his ADHD and anxiety, in November, where Plaintiff endorsed looking toward the future despite passive suicidal ideation, and in December, where he reported that living in the woods helped reduce his anxiety and hypervigilance. T. 23, citing Tr. 436, 438, 570, 577, 585, 595, 608. The ALJ noted that these improvements continued throughout 2021 as well, noting reports of mental status exams reflecting linear coherent speech and thought

processes, intact memory, improvements in his mood, improved motivation and ability to complete tasks, and good insight and judgment. Tr. 23-24, citing Tr. 486-87, 489, 495, 499, 505, 510, 539, 545, 556, 561. Notably, these same reports continued documenting Plaintiff for depression and anxiety, while also noting that Plaintiff had passive suicidal ideation without plan or intent, and that he was making progress in addressing his underlying traumas in therapy.

The court's review of the record shows that the ALJ's finding is supported by substantial evidence. Plaintiff's mental health records reflect that he has never stopped suffering from depression and anxiety, but they also show that he has continually improved with treatment. For example, Plaintiff's records consistently reflect a combination of depression, anxiety, or a euthymic mood. Tr. 433, 436, 438, 486, 499, 522, 529, 538, 555, 561, 591. These records also note that he has passive suicidal ideation without plan, intent or means, and that these thoughts are a part of his everyday life. Tr. 454, 499-501, 504, 511, 517, 537, 543, 583-84, 590. Despite the passive suicidal ideation, he also reports improvements in his depression and anxiety. In March 2020, he reported improvements in mood, energy, and sleep quality. Tr. 370. In April, he endorsed that his depression, rather than his anxiety, was preventing him from functioning, and that he does well on Bupropion. Tr. 424, 426. In May, he reported having more energy on Wellbutrin. Tr. 449. In June, he reported less suicidal ideation, had a noticeable improvement in his mood, discussed hopes and goals for the future, which was a marked increase from his initial assessment, and reported being able to focus in order to complete tasks and projects. Tr. 434, 436, 438. In August, he reported that his ADHD treatment had a clear benefit on his depression. Tr. 608. This trend continued from September to December. Tr. 570, 577, 585, 595.

Plaintiff's records show this trend continued in 2021, with notes from February showing continued benefit from his ADHD treatment as well as plaintiff's report that he was

doing well overall, that he feels more stable than he has in a while, has no psychosis, and that "things are looking up." Tr. 557, 559. In April, he continued reporting doing mostly well, that Adderall helped his motivation and task completion, and that his therapy was going well. Tr. 545. In June, he reported that his mood was getting better, denied suicidal ideation, and had no psychosis. Tr. 508. In July, he presented with a calm attitude, no suicidal ideation, and that a new medication "dims emotions," but is not numbing, along with good insight, judgment, attention, memory, and thought process. Tr. 499-501. In August, he reported a clear improvement to his mood with Imipramine, no suicidal ideation, a little more energy, and some brain fog. Tr. 491, 493. In September, he continued reporting that his medications were helping his mood, but that it may be leading to an increase in his ADHD symptoms. Tr. 486. Notably, in August, his treatment provider suggested an increase in Adderall to help, but he declined at the time. Tr. 491. In October, he reported no suicidal ideation, feelings of depression, and that his medication was impacting his memory, yet his provider noted that his memory was intact. Tr. 484-85.

Although Plaintiff continued showing signs of depression and anxiety, his records indicated continuing improvement with treatment. Therefore, the ALJ's finding is supported by substantial evidence and is a reasonable interpretation of the record; the ALJ did not err in discounting Plaintiff's subjective symptom testimony because his impairments improved with treatment. [2]

---

[2] Because the ALJ provided at least one valid reason for discrediting plaintiff's symptom testimony, this court need not resolve any other dispute regarding the ALJ's other bases for discounting plaintiff's testimony, other than to note that had plaintiff challenged the other bases upon which the ALJ relied, and had there been error, such error would have been harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination); *e.g. Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [claimant's] symptom testimony [were] harmless").

## II. Consideration of New Medical Opinion Evidence

Plaintiff alleges that the Appeals Council erred when it rejected new evidence submitted in the form of medical opinion evidence from Plaintiff's mental health provider, Lydia Bartholow, DNP, PMHNP, because the evidence did not relate to the period at issue. Pl.'s Opening Br. 9-12, ECF 11.

The Commissioner does not argue that the Appeals Council did not err, arguing instead that the error is immaterial because the Appeals Council made the new evidence part of the record, and thus the court is compelled to review the evidence in light of the *Brewes* standard. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). Under the *Brewes* standard, "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Id*.

Plaintiff submitted new evidence to the Appeals Council. The Appeals Council decided that the new evidence did not relate to the period at issue because it was submitted three months after the ALJ issued their decision. Therefore, the new evidence could not affect the ALJ's decision. The Appeals Council then made the evidence part of the record. Tr. 2. Because the Appeals Council considered the evidence and made it part of the record, this court is compelled to consider it when reviewing the Commissioner's decision. *See Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (holding that a court reviewing the Commissioner's decision must consider the record as a whole).

As stated above, Plaintiff's new evidence was a medical opinion provided by

Lydia Bartholow, Plaintiff's mental health provider. In her statement, she opined that she has been treating plaintiff since April 2020, that he meets listing 12.04 for depressive disorder, that he has marked limitations in his ability to interact with others and to adapt and manage himself, that he would be incapable of interacting appropriately with supervisors in any work environment, that it is unlikely Plaintiff could get a job, that he would be off task at least 20 percent of the workday due to dissociation symptoms, and that he would be absent more than two days per month on average due to depressive symptoms. Tr. 11-12.

While Bartholow's opinion on whether plaintiff meets listing 12.04 is irrelevant[3], marked limitations in Plaintiff's ability to interact with others and to adapt and manage himself, an inability to interact with supervisors in any work environment, being off task at least 20 percent of the workday, and being absent more than two days per month would undoubtedly affect the ALJ's RFC determination. According to the vocational expert, being off task 10 percent of the workday or absenteeism up to 16 hours a month would not be tolerated by employers. Tr. 53. Thus, if Bartholow's assessment of 20 percent off task and two or more days absent were true, then plaintiff would be disabled. Therefore, the Appeals Council erred.

**III.    Remedy**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that

---

[3] "[W]hether or not [a claimant's] impairment(s) meets or medically equals any listing" is an "issue reserved to the Commissioner." 20 C.F.R. § 416.1470(b)(c)(3).

analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that a remand for further proceedings is the proper course here because the ALJ improperly rejected Plaintiff's subjective symptom testimony and did not take Lydia Bartholow's medical opinion into account when formulating the RFC. As discussed above, the ALJ did not err in evaluating Plaintiff's subjective symptom testimony. However, because the Appeals Council erred in not considering new, material evidence in the form of Bartholow's medical opinion, and the ALJ was not able to review it before making their decision, such an error necessarily results in an incomplete RFC and step five finding. As such, the issue of plaintiff's RFC remains unresolved. *Taylor v. Berryhill*, 729 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made.) Such an error is "not inconsequential to the ultimate nondisability determination." *See Treichler v. Comm'n Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

On remand, the ALJ shall properly analyze Lydia Bartholow's medical opinion according to the regulations set forth in 20 C.F.R. §§ 404.1520c(c), 416.920c(c), including supportability and consistency. The ALJ will incorporate any and all limitations resulting from the evaluation of Bartholow's medical opinion into plaintiff's RFC, or provide reasoning

supported by substantial evidence why any portion of the medical opinion is rejected. As warranted, the ALJ will reevaluate Plaintiff's RFC and obtain any supplemental VE evidence if necessary. *Garrison*, 759 F.3d at 1019 (stating remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding").

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of May, 2024.

Adrienne Nelson
United States District Judge